QUALITY STAMP COMPANY, INC. *v.* PAGE'S SUPERMARKETS OF TUPELO, et al.

No. 42560          February 4, 1963          149 So. 2d 348

*W. P. Mitchell, Jess B. Rogers,* Tupelo, for appellant.

*Mitchell, McNutt & Bush,* Tupelo, for appellees.

GILLESPIE, J.

Appellee operates two large supermarkets in Tupelo, and since 1958 distributed to its customers Quality Stamps, trading stamps sold and distributed by appellant. Appellant had actively promoted Quality Stamps and was the largest distributor of such stamps in the Tupelo area. During this time, appellee purchased its groceries from Malone & Hyde, a wholesale firm. Ap-

pellant and Malone & Hyde had an arrangement whereby they worked together, Malone & Hyde promoting Quality Stamps and appellant promoting the distribution of its stamps by the retailers who bought their groceries from Malone & Hyde. These two firms also cooperated in their advertising campaigns.

Sometime prior to December 29, 1961, appellee severed connection with Malone & Hyde and made arrangements to operate as a Sunflower Store supplied by Lewis Grocery Company. When the president of appellant heard about this arrangement, he went to see the president of appellee and requested appellee to cancel the stamp contract with appellant, which had about another year to run. Appellee agreed, and the contract was cancelled on December 29, 1961, but appellee declined to surrender to appellant the supply of Quality Stamps then on hand. At that time, appellee had no contract with any other stamp company.

About January 25, 1962, appellee entered into a contract to handle and distribute to its customers S & H Stamps, and began distribution of S & H Stamps on that date. On February 1, 1962, appellee publicly announced that it would distribute S & H Stamps to its customers. On the same day, appellant mailed out 7500 folders to householders in Tupelo and the surrounding area. This folder contained 18 coupons, each of which could be redeemed for 100 Quality Stamps. Six of these coupons were for purchases at stores other than food stores and we are not concerned with those. Six of the coupons, one good for each week for six weeks through March 17, 1962, were redeemable for 100 Quality Stamps with the purchase of certain designated grocery items at any food store giving Quality Stamps. There were six other coupons, one redeemable each week from February 1 to March 17, 1962, and each provided for 100 free Quality Stamps with the purchase of $3.00 or more at any food store giving Quality Stamps. The mailout of

these coupons by appellant was followed by an intensive advertising campaign in newspaper and by radio promoting Quality Stamps and identifying Quality Stamps with appellee's competitors.

Shortly after the so-called ''mail out'' of the coupons above described, appellee caused an advertisement to be published in the local newspaper widely distributed in the Tupelo area, that appellee would redeem the coupons mailed out that week with S & H Stamps, and invited the public to bring into appellee's stores the coupon good for that week. Similar advertisements were inserted in the paper each week inviting the public to bring in the coupons recently mailed out in the Tupelo area to be redeemed at appellee's stores with S & H Stamps. A large number of the appellant's coupons were thus redeemed by appellee with S & H Stamps.

While these advertisements were being made, application was made to the chancery court for a temporary injunction and a temporary hearing was had and the chancellor declined to issue a temporary injunction. On final hearing, the chancellor heard some additional testimony and declined to issue a permanent injunction.

In declining to issue the permanent injunction, the chancellor found that appellee was justified in advertising that it would redeem the mail out coupons with S & H Stamps in order to protect its own customers. The denial of the injunction was also based on the fact that appellee did not advertise that it would redeem the sixth coupon in the mail out and, in fact, did not redeem the sixth coupon.

The mail out referred to was a device used by trading stamp companies infrequently, usually upon the opening of a new store or some special promotion in cooperation with retailers using the stamp company's stamps. Appellant requested the cancellation of the quality stamp contract with appellee and appellee was confronted with the best method of changing over to another stamp com-

pany without losing customers. Because customers would have partly filled books, the tendency would be for them to go to a store giving the same kind of stamps they were accustomed to receiving so as to fill their books. Appellant chose the time of appellee's change-over from a store supplied by Malone & Hyde to one supplied by Lewis Grocery Company, and from a store giving Quality Stamps to one giving S & H Stamps, to mail out many thousands of coupons redeemable with Quality Stamps. Appellant's president testified there were two reasons why he made this mail out, one was to correct a rumor that Quality Stamps were not going to be distributed any longer in Tupelo, and the other was to retain for appellant the customers who had been patronizing appellee's stores. He admitted the purpose was to divert customers who had been patronizing appellee's stores into stores that were giving Quality Stamps. So the purpose of the mail out was clearly to take customers away from appellee's stores. The chancellor was justified in finding that the reason appellee advertised that it would redeem the coupons was to protect its customers during the critical change-over period. Appellee did not advertise to redeem coupon number six and did not redeem any of said coupons, and there was no plan of appellee to redeem any further coupons that appellant sent out unless the president of appellee felt that it was necessary to do so to protect his customers.

Appellant relies on a large number of cases and other authorities on the question of wrongful interference of the property right of others and what constitutes unfair competitive methods. In our view, none of the authorities are directly in point. **(Hn 1)** We are of the opinion that under the particular facts and circumstances of this case appellee was justified in offering to redeem the coupons mailed out by appellant as a defensive measure to prevent serious loss of customers at a critical time when he was changing over to the use of a new stamp.

The court had a right to take into consideration the fact that appellee, over a period of years, had been the largest distributor of Quality Stamps in the Tupelo area and had actively promoted Quality Stamps and encouraged the development of appellant's business generally.

We pretermit consideration of the question whether the offer to redeem the coupons would have been an unfair competitive practice under different circumstances. We are not called upon to determine whether appellee would be justified in advertising that it would redeem such coupons mailed out by appellant in the future. The chancellor understood that appellee had no intention of offering to redeem any future coupons that appellant might mail out unless required to do so to protect his own customers. Since the change-over has been accomplished, the chancellor saw no probability of any further occasion for appellee to redeem appellant's coupons. We are of the opinion that this is an additional ground why the chancellor was justified in declining to order the issuance of a permanent injunction.

We are of the opinion that the decree should be and it is hereby affirmed.

Affirmed.

*McGehee, C. J., and Kyle, McElroy and Jones, JJ.,* concur.